on behalf of the people, Ms. Victoria Joseph. Mr. Johnson, you may proceed. Thank you. May it please the court. My name is Douglas Johnson and I represent the appellant Leonard Puccini. He was convicted of one count of aggravated criminal sexual abuse and is currently serving five years in the Department of Corrections. I understand that I face a hard burden asking you to reverse a conviction based on an insufficiency of evidence and I know it's a rare case where that happens and I submit this is the case. I can ask even the court to assume that this act took place, this spanking took place. I certainly don't believe that. We don't believe the record substantiates that, but let's assume please that the spanking took place as J.S. testified. Even so, what we now, what we know, what is undisputed is that J.S. was on the floor. He heard there was no talk by the defendant. There was no moaning, etc. There was a spanking and then the defendant went into a room and shut the door. That's what is undisputed. The state had to prove beyond a reasonable doubt that the defendant did this to sexually arouse himself and there is no evidence of this charge act, on this charge act, that he did so. The state may say, well, he had an erection. On page 20 of their brief, the state cites, and this is what they have to resort to, this type of thing, they say, the victim noticed that he had an erection and they point to page 173 of the record. And the exchange on that page is defense counsel asks, okay, if you never looked back, you never saw whether or not he had an erection, right? Right, I guess. The court, knowing what's important, says, I'm sorry, what was the answer? Right, I guess. So even if the J.S. said at other times, I think he did, maybe, I guess, I don't know. If I come in here and tell you the sky is purple, you don't have to accept it. It's a conclusion without an observation. And that, in this case, is full of those. That's one of them. So there's no erection. The record doesn't support it. Then we have the story about masturbation. The defendant went into a room after he did this and closed the door and I heard tapping. That's what he said. That's it. I heard tapping. From all those feet away, I heard tapping. I don't know. What did it sound like? Jacking off, I guess. I don't know. And that's the sum total of that. I submit to you, the justices, that cannot be enough for sexual gratification. A spanking plus entering a closed door to possibly change your clothes. Do we believe this defendant was in his boxer shorts? We don't know from this record because the J.S. never said I saw him in his boxer shorts, if that matters. He says I think he was. Even assuming that, maybe we can infer reasonably from that, the defendant went into his room to get dressed. Tapping. Maybe the trial judge understood this because in his remarks in finding Mr. Pachin guilty, he said, we have the prior bad acts. That's what this guy does. This guy touches little boys for sexual gratification. And I submit to you, this is the danger of prior bad acts. Even for a trial judge, not just a jury. This defendant was convicted, I believe, because it looked like he was a bad guy. And for this, we've assumed the spanking took place. Let's even assume that the prior bad acts took place. I can't believe they didn't. I have time. I will argue why the record doesn't substantiate that. But even if they did, those young, those teenagers, they were teenagers at the time, they said he never spanked me. Both of them said he never spanked me. So if we compare that to the CHARGE Act, we look and we see, well, this defendant sexually gratifies himself by fondling the genitals. Why aren't they similar enough? I mean, you know, come on, why aren't they similar? Because they're very different acts. These are filthy, heinous acts that the defendant is accused of. They are fondling the genitals, never even touching the rear end, from what we can tell. From the second victim, hundreds of times he touched me frontally. Also, he, I masturbated in front of him. He forced me to. He masturbated in front of me. If this was the defendant's MO, they are alone in that house. If this is what he did, we would infer that is what he would have done on that occasion. There's no testimony in the record that anyone would have discovered that. If this is the kind of thing he did, we would probably have more accusations by JS or something more would have happened then. When we allow through the statute propensity evidence, and I know we do, there has to be some limit to it. There has to be. What should the limit be? The limit should be sufficient similarity of acts, closer proximity in time, just like prongs one and two say. And when we talk about other facts and relevant circumstances, that's pretty broad. But it can't encompass this. And these gentlemen said, basically, you can translate their testimony. These young men, he did not do to us what he did to him. That's what you can infer from this record, because what he did to us was far worse. And under the case law, too, I believe that is a bar. If you're going to admit more heinous activities, then you better be careful, because that, of course, has the opportunity to greatly prejudice. And we know it did prejudice here because that's what the judge said. He said, I'm looking at these acts, and it's human nature, maybe even for a judge, I'm looking at these disgusting acts that this defendant did. This is what he does. But if you look at it, I believe, like this court should, respectfully, you will see that is not what the picture they're painting of that defendant, even if it's true. And it's not true. Is it, if we look at the fact that the, just taking it all at face value, the conduct alleged versus the conduct of the other crimes evidence, is it enough to reverse finding that the other crimes evidence is more heinous? I believe it would be. And what standard would you apply? I believe, I would look to, I believe it's the Smith case, and say that these are far more as far as the admission of the evidence, I don't believe they should have been embedded in the first place. But I would apply a standard that says because they are far more numerous, far more heinous. Is it numerous? You know, is it the number of events, or is it the, how do I say, quality of the conduct? I believe it's the quality of the conduct, primarily. But I also believe the I would say, how can we believe, what is the standard for allowing prior bad acts with regard to whether they happened or not? Another problem I believe with this case is, I believe it's a preponderance of the evidence. The judge views it as discretion, if it is not, more likely than not these acts should have been admitted. Here, we have, and I understand there's no bright line test about admitting these acts as far as how long ago did they happen. But it certainly must weigh these accusers that they were between 15 and 20 years old. I understand there's no duty of a child to disclose these acts when they happen. But it certainly must weigh against them when they come forward in response to a newspaper ad and say, oh yeah, he did these things to me. Let's take the first victim. I came forward after a newspaper ad because, and by the way, I was mad at the newspaper about a guy that kicked me out of his house. Come tell us if Leonard Puccini abused you. I got it. I got it. I'm going to do that. Are you saying this goes to weight or admissibility? I'm saying this goes to admissibility because there has to be a standard of whether they happened or not. So this part goes to weight. There is too much weight or admissibility. I'm sorry. I'm sorry. This goes to admissibility. There is too much here. I believe you're not admissible either, but there is too much here. Late disclosure. Disclosure for motivation. One of the victims said, I wanted to protect my niece. If you look at the record, that doesn't make any sense. If he said, I didn't disclose because I was embarrassed, obviously, that would be a reason. But I didn't, and he didn't say that. He said to protect my niece. The other accuser said, I hope he gets the death penalty. I understand if someone did this to me, I would maybe think the same thing. But that shows a bit of a bias about how he feels about the defendant. But if so, why did he go to his house for Christmas after these things happened? Isn't bias something that we instruct juries all the time that they're to consider? I probably used the wrong word, but it shows a hatred possibly beyond what he should have. That line, let me put it this way, should be considered when one is evaluating his testimony. And more importantly, if these things happened, if I hate him so much, I want him dead. Why am I going to his house at Christmas? How much more do we need to know? There must be some threshold for if these acts get in. And the other portion, I think, that cannot be ignored. Counsel, you, in your initial brief, asked for reversal. In your reply brief, you asked for reversal and any other relief that seemed appropriate. The latter could include a remand for a new trial. The former would not include remand for a new trial. Could you be more specific or at least indicate to this panel what relief you're seeking and why? Yes, Your Honor. Both. Initially, I believe the evidence is clearly insufficient, and for that we would ask that the conviction be reversed outright. With regard to the remand for a new trial, that is based on if the court feels that the evidence was sufficient, which we would respectfully disagree with, but the prior bad act should not have been admitted, then we would ask for a remand for a new trial where none of the prior bad acts got in or were admitted. And they shouldn't have gotten in. They are not sufficiently similar. They are, if we only have three prongs in the statute to determine whether or not the prior bad acts are going to get in, and it's pretty broad, and as we know, it allows propensity, but proximity, we're going back 15 to 20 years. Similarity, as I said, much more heinous, much more numerous, and not the same type of thing. People spank their children. It is not an inherently sexual act, and there is nothing about the act, absent the prior bad acts, that one could call it inherently sexual. There's no erection. The masturbation story is just out of this world. So the other relevant facts and circumstances, I don't believe there are any in this case. These are very emotional cases, I know, as the court has great experience in going through them. This is one, though, there has to be a limit. We can't just look at accusations made against a person because he's maybe different and says to a child, I love you, or this is the way he lived his life, and maybe to some of us it looks a little weird that he's giving text messages to this child and saying, I love you. I don't want to get too much into things, into speculation, but he did take this child that was trying to help him. And we have a mother who talked about a lawsuit and all those things. And I don't want to argue those types of things before your honors. But I think this is a case where there's too much wrong. Prior bad acts couldn't, didn't occur. If they did occur, they shouldn't have been admitted. Even if they were admitted, you can infer, and this is my last point, you can't, this man is proven beyond a reasonable doubt. Because I suggest to you, the record in no way proves sexual gratification beyond a reasonable doubt. So we have to look at the prior bad acts. But were those really proven beyond a reasonable doubt? They got it correctly under the law, I suppose, if all my arguments are disregarded. But I don't believe anyone could look and say, these prior bad acts, I am convinced beyond a reasonable doubt they happened. So the trial judge erred in convicting based on something, as he says in his very lengthy written ruling, based on something that was not proven beyond a reasonable doubt, and that's the sexual gratification. Are you saying then that the sexual gratification has to be proven independently beyond a reasonable doubt before the evidence of other crimes is even admissible to corroborate it? I would submit yes. I believe that the intent of the statute is not to fill in such a gap when it doesn't exist on the charged act. I believe the intent is when you've proven, when a reasonable trier of fact could find all the elements beyond a reasonable doubt, then if the circumstances of the statute are met, if the requirements of the statute are met, then we can look to other crimes. But we can't totally infer an element from the uncharged prior bad acts. So you can use it to corroborate it, but not to actually fulfill the beyond a reasonable doubt requirement for that element. Is that what you're saying? Yes. You said something in your question. It hasn't been proven beyond a reasonable doubt that there was sexual gratification. And I'm wondering if that is really necessarily required when I believe the law says that when he doesn't act with the intent to gratify his sexual desires, not necessarily indicates that it's a fait accompli or that it's accomplished. It's the idea that he's doing this act of spanking in order to arouse himself. Whether or not he gets off is something else again. Do you see my point? Because what you said was they didn't prove that he had release. And my point is I'm not convinced that that's a required element of proof. So then, of course, the erection would not matter because he doesn't, I think Your Honor's point is he does not have to sexually gratify himself. If he had the intent of sexually gratifying himself, that would be enough. And I said, yes, if I am correct, there is still no evidence in the record that he had the intent to sexually gratify himself. He had this child there. They would have you the state would have you believe he is a terrible, filthy, vile person who takes children and does horrible things to him. If that is their point, he would have gratified himself in another way on this date. Just like if you believe the two accusers, he would have done the type of things he did to them, but then he never spanked them and he didn't go further on this date. What he did was I don't believe I don't believe the record supports because of the complete lack of credibility and inconsistencies in the case. I don't believe it happened when he was 13. It happened when he was 12. But beyond that, it didn't happen. He went, walked through and went into his room and that was it. So I don't believe there was any intent to arouse and he had the child there. I don't want to go too far afield, but if he had an intent, he could have aroused himself just like they say he did in other ways. Is there any case law that establishes that spanking a child is deemed to be presumed to be a means to an end of sexual gratification? A similar to fondling genitalia would be deemed to be an attempt to gratify oneself? I can't point to a specific case regarding spanking. Was there any expert testimony in this case regarding the idea that flagellation or spanking would necessarily have a reasonable probability of inciting sexual gratification? No, Your Honor, there was no sexual, there was no expert testimony. But I believe spanking is not an inherently sexual act, just like what I believe was Ostrowski recited in the case. Therefore, when we have an act that is not inherently sexual, the court has to look to the other facts and circumstances, and here there are none. Well, is single masochism a form of sexual gratification or is it something else? I don't, I believe I, I'm sorry, Your Honor, I can't answer that. Any other questions? No. Thank you. You'll have an opportunity to make the bubble. Ms. Joseph? You may proceed. Good morning, Your Honors. Good morning. Victoria Joseph, on behalf of the people of the state of Illinois, may it please the court, counsel? People, the defense seemed to focus a lot on the evidence of sexual gratification in this case. And right before he sat down, he brought up the case of Ostrowski, which he cited in his reply brief. The people assert that this case is distinguishable from Ostrowski, which was the instance of a grandfather kissing a granddaughter. I believe it was an open mouth kiss at a public celebration following a course of conduct that was established between the grandfather and granddaughter. The, this court found that the kisses were not French kisses and no other acts accompanied the kisses to suggest they were acting to gratify or arouse. There was no bodily touching and the conviction was reversed. This is not a case of family members kissing each other at a public celebration. Here, the defendant pulled the victim's pants down and spanked his bare buttocks. Okay, let's cut right to the chase. What was that inherently sexual gratification? It may not be inherently sexual gratification. Okay, if it's not inherent. But accompanying factors are the removal of the, of the victim's clothing. The victim was sitting there not doing anything. The defendant in this statement to police said, I might have spanked him for being a snot. There's no evidence surrounding the situation during which the spanking occurred to indicate that this was a form of punishment. Also distinct from Ostrowski, this was in the defendant's home and there was no one else around. He had, he had the victim alone. He came up from behind him, pulled his pants and underwear down and spanked him for no apparent reason. And what? I do not believe so, your honor. It was just the complaint for aggravated criminal sexual assault abuse. My mistake. What is the evidence of the intent to sexually gratify? It comes from both the non. Sorry, I'm trying to think of the, the phrase I want to use here. The fact that there is, there was nothing to compel the defendant to take an action that could be associated with punishment against a young man, removing his clothing when they are alone. And whether the trial judge did not necessarily rely on his evidence of going into the bedroom and making noise consistent with what the victim believed was jacking off. That is what he testified to. He also, he had conflicting testimony on the presence of an erection, which, as your honors pointed out, is not the determining factor of an intent to arouse because you could be intending to arouse, but not yet achieving the arousal at the time. Are you saying that because there was no rational reason for a spanking, that the only other possible reason would be for sexual gratification? Well, it's the accompanying factors of doing this outside of the presence of others and accompanied by the removal of clothes, which were cases that were distinguished in Ostrowski. I can't, you know, I have two children, 35 and 7, I believe, and I can't ever remember spanking them in the presence of other people. Or even thinking about whether or not I was spanking them in the presence of other people, or whether I wanted to spank them in the presence of other people, or whether I wanted to exclude the presence of other people when I spanked them. So, I'm having a hard time accepting your statement that the fact that it's outside the presence of people, especially when there appears that there aren't people in the vicinity, then you have to go out and ask people to come into their presence to witness this. I don't really see how that is probative, especially beyond a reasonable doubt. I would like a response to that, if I could get one. You can say it, it's just weird. No, no, I would not doubt that most parents do not want to spank their children in front of other people. However, the people were using this as a distinguishing factor from Ostrowski, which was specifically looking at the public nature of the act. Here, this was not a public, there was no public nature of this act. This was not a course of conduct that had occurred. There was testimony that there may have been one other time that the defendant spanked the victim. The defendant himself stated that there was only one time that this would have occurred. So as distinguishing factors, but among those factors, the most significant, the people would assert, would be removing the clothing in order to touch. As looking at, it may not be this quite, it is not fondling the breast. However, in looking at the cases where somebody's breast is grabbed, it's looking at difference, there is a consideration of the contact below or above the clothing. And in some of these, so among the factors, the removal of the clothes here is the more significant factor. It's pretty much the only factor, isn't it? However, the people assert that, Your Honor's asked if the sexual gratification has to be proven beyond a reasonable doubt before the other crimes evidence can be considered. People assert that that can be a consideration of intent, especially in light of cases such as Wilson, which was cited in our brief, where you have a defendant who has claimed the spanking was for one purpose, but you are using the other acts to show that that was not. It was not an innocent mistake or an innocent purpose behind the act. And that it happened here, though, right? But my question is, what didn't happen? What you said other crimes, the other crimes evidence can corroborate the defendant's assertion that this was just your regular average everyday spanking. Did the defendant make such a statement? The defendant made a statement, his June 29th statement was there was a possibility that the victim got spanked for being a snob. And that was at 2228 on the video. And then the other crimes evidence corroborates what? The other crimes evidence collaborates that the intent was not because the defendant was being a snob. It corroborates that it can be used to corroborate the lack of an innocent motivation behind the act. And when it has met the statutory factors of 115 7.3, it can be used as propensity evidence. That is a proper use. Doesn't there have to be some similarity between the acts?  And the people assert that there was some similarity. Okay, what were they in this case? The people that the trial judge found the following similarities. The relationship between the complainants and the defendant, the ages at the time of the alleged offenses, the gender of the complainants, that they were alone with the defendant at the time of the offense, and that there was inappropriate touching involved. The people recognize the inappropriate touching varied from complainant to complainant. However, as case as cases of how such as Donahoe and Williams, the similarities are looking at things like age, race, time of day, geographic proximity, the type of assault and abuse, the manner of conduct and gender. And when we're not looking at this evidence as modus operandi, it is mere... Wait a minute, you just said it was... Your point was that this was to explain away an absence of a mistake or innocent construction. Didn't you? Yes, Your Honor. Sorry. That's okay. However, in Wilson, it was also being used as... Because the defendant placed an innocent construction on the actions, the Supreme Court still said mere general areas of similarity are sufficient to allow the evidence to be admitted in such cases. So they were not looking at this as a modus operandi, but going to the defendant's intent that it was not an innocent intent. And the people know the difference in the factual similarity here are also a product of the defendant's access to the victims. His earlier complainants, he had lived with them. He had spent more time with them. It is not unusual that he had opportunities to engage in acts that, as counsel describes, are more heinous or involve touching. Should we be concerned at all that the other crimes evidence here, just strictly at face value, are far more egregious than the conduct that was alleged in this indictment? I mean, should we consider it? And if so, what way should we apply? There is a consideration of that, Your Honor. However, in looking at the abuse of discretion standard by which these other acts are admitted, the trial court engaged in a full meaningful analysis of these statutory factors. Consider all the relevant case law, and conducted a meaningful assessment of what was probative versus prejudicial, and actually limited a substantial amount of the originally presented evidence. The trial judge recognized the fact that there was a period of years that did decrease the probative value. However, he stated that it did not altogether make the other crimes evidence inadmissible. Also, he found that there were similarities of facts in the cases. He limited the testimony that could be allowed, and he believed that he was borrowing testimony that was extensive and far more heinous than what was alleged in this case. The things that were alleged as other bad acts are patently bad acts. They patently contain in those acts the rational or reasonable inference that what was done was done for sexual gratification. Would you agree with that? You want me to repeat myself? Yes, I'm trying. You're asking if... I'm suggesting to you that the prior bad acts were of such a nature... That they were for sexual gratification. ...that it would be readily apparent and reasonable to presume or conclude that they were for sexual gratification. Yes, especially in the cases where there was masturbation going on. That's probably a strong indication that... Well, in this case, one of the problems that I see is whether or not this act was done for sexual gratification. So how can you correlate the two? Unless you're saying that a sexual deviant is going to do everything that appears to be a possible sexual deviation is done for sexual gratification. That seems to be the logic that the state's applying in attempting to suggest there's a connection between what is obviously sexual deviancy and something that may or may not be sexual deviancy without any expert testimony or witnesses who have some knowledge in the area of whether or not spanking children, whether they're bare-bottomed or not, causes sexual gratification. And if the judge decides that these things are either pivotal or sine qua nons or benchmarks, doesn't that tend to indicate that there was some prejudicial error? However, the purpose of the admissibility of other bad acts, is it showing the relevancy for any purpose to show intent, motive, identity for propensity? You've heard the term propensity. Yes. Why isn't this a situation where it's being presented for propensity, which is he must have had an intent to sexually gratify because he's a sexual deviant based upon these other prior acts, which means you're really talking about propensity. You're talking about once a sexual deviant, always a sexual deviant, when it comes to dealing with similar factual situations, which is somebody who's a child, who apparently is the same gender, who lives in the house with him. So virtually everything that he does with that in that scenario would be deemed to be an act of sexual deviancy. And what you're proving is not modus operandi, you're proving propensity. The legislature has explicitly allowed for the propensity evidence in certain sexual assault cases and created a threshold by which that evidence may come in. The people assert the judge properly applied that threshold in this case. Because this passed the threshold, he did weigh the prejudicial effect. It was permissible under 115.7.3. It is your position then, if you can establish any act of sexual deviancy, that it is admissible for purposes of propensity, regardless of how similar or dissimilar they are, because the legislature has decided that propensity is now admissible. If the judge weighs the probative value and considers the degree of factual similarity of the charge or predicate offense, there still has to be the full consideration of these threshold matters. And in this case, the judge did consider these threshold matters and did find where there were similarities. He noted where there were not similarities. And that's why the legislature established this test. I think we're now getting to the point where we're discussing whether the glass is half empty or half full. So, thank you. Mr. Johnson, you may make rebuttal. Thank you, Your Honor. Briefly, with regard to whether we should consider whether these acts are more heinous, the prior bad acts, I would cite the Smith case, where the court did say the prejudice is compounded by the factual differences between the alleged prior offenses and the charged offense. Especially since the prior offenses involved uncharged and unproven allegations of sexual abuse that are even more heinous than the charged offense. And lastly, I just say this is a very dangerous case. I don't believe, irregardless of the similarity between the uncharged acts and the charged act, they actually come into propensity. Because what happens with the next case where a child is spanked and makes an accusation and then someone comes out of the woodwork and says, that doesn't like that guy, says, you know, that guy was perverted with me. Because that's what we have here and that would be the precedent, I believe, if this conviction is affirmed. To what extent do you consider the circumstantial, as circumstantial evidence, the victim's response to the defendant? And what I mean by that is the fact that he hid his cell phone, the fact that his mother said that he was more quiet about his relationship with the defendant, the fact that he refused to take phone calls from the defendant. You know what I mean? There were several different things that you could look at this child and say, well, something happened here. We don't know exactly what. But isn't that circumstantial evidence of the fact that the defendant did something to him? I believe no. First of all, I'll assume that those things are correct for the purposes of your question. Secondly, he hid his cell phone. Maybe there were text messages saying, I'm going to buy you that present you want. Perhaps there were things the child was doing, or the defendant was doing that the child didn't want the mom to know about. He was quieter. He may be quieter for any multitude of reasons. And if the state could have proven those changes really mattered, they should have delved into it more. But I don't believe they could. These are, there's wild speculation about why he may have hid his cell phone or he was quieter. Maybe something was going on at school. I don't believe it's fair to infer that it's because he was spanked. Well, is the fact that the defendant was buying him expensive gifts, at least according to the mother, that's her testimony. So we'll take that as true. Buying him expensive gifts and text messaging him and saying, I love you. Have a good day. I'll call you later. Remember, I love you. Are those circumstantial evidence of his guilt? I believe absolutely not. I think people can act differently. It's not what I would do with a young man. But I believe this defendant leads a life where he didn't have a child and he was expressing himself. He's in the Big Brothers Big Sisters program. He's expressing himself in the way the law allows. I mean, I will say that there were accusations supported by the record that this was a bad mother. So it could go both ways. And he cared about helping this child. And I guess without going into whether or not those things are true, I believe it would be wild speculation to say something like, this child was getting quiet. So we're going to figure Len's abusing him. I don't believe that's circumstantial evidence at all. If there are no further questions, I would just ask for a new trial or a remand in the event this Court saw evidence sufficient. But the probably can't actually properly do it. The case will be taken under advisement. There's one more case on the call. There'll be a recess for approximately half an hour.